

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NEM:KPO

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 10, 2024

By E-mail

The Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Sergio Brok
               Misc. Docket No. 24-360

Dear Judge Scanlon:

      On May 10, 2024, the defendant Sergio Brok (the "defendant" or "Brok") was arrested at John F. Kennedy International Airport ("JFK Airport") flying into the United States from Argentina. Brok will make his first appearance this afternoon before Your Honor. The government respectfully submits this letter in support of its motion for a permanent order of detention for defendant who presents a serious risk of flight. See 18 U.S.C. § 3142(f)(2). Brok is a United States citizen born in Argentina, and he holds a passport from Argentina. In 2020, while he was living in the United States, Brok learned that he was under federal investigation for his involvement in a scheme to fraudulently obtain funds from the Florida Department of Unclaimed Property ("DUP"). He was outside of the United States when he was indicted in the Northern District of Florida for mail fraud and has not returned until today.

      Given that Brok remained outside of the United States after learning of potential prosecution and that he faces an estimated Guidelines range of 30 to 37 months' imprisonment if convicted, there is no condition or combination of conditions that can reasonably secure his appearance in Court. He should therefore be detained.

I.    Background

    A.    Offense Conduct

      Brok is a U.S. Citizen originally from Argentina with an Argentina passport expiring on July 10, 2026. He received a Juris Doctorate from the University of Buenos Aires in 1984 and a LL.M. from Duke University in 1991. Prior to the indictment, Brok was living in the

Miami, Florida area and was working for MMC Multimedia, which produces films and television shows for Latin America.

On December 1, 2020, a grand jury in the Northern District of Florida indicted Brok in a two count indictment charging mail fraud. As charged in the indictment, from 2014 to 2016, Brok engaged in a scheme to fraudulently obtain property held by DUP that he was not entitled to through the use of false claims. The two counts charged in the indictment involve claims for accounts in the names of Inversiones Euskera SA and Isabella Overseas, LTD.

    i. <u>Inversiones Euskera SA</u>

In December 2015, the defendant sent multiple false claims to the DUP seeking funds in the unclaimed accounts of Inversiones Euskera SA. Brok sent the claims in the name of Leandro Tiribelli and provided false Panamanian identification in that name as proof of identity. The FBI Legal Attaché (Legat) for Panama has confirmed that the Panamanian identification for "Leandro Tiribelli" was fraudulent. The false Panamanian identification used the same picture that was submitted by Brok in another claim to the DUP. However, that other claim was for accounts of Promociones Capilla and the identification purported to be a Chilean identification with the name Jose Andres Patricio Larengo Ruiz. The same photograph was also used in a claim in Indiana for unclaimed property under an Ecuadoran identification in the name of Pablo Javier Espino.

Shortly after making the claims, Brok created a company with a very similar name in New York. He incorporated Inversiones Euskerasa Inc (as opposed to Inversiones Euskera SA) in New York on March 11, 2016. The State of Florida sent the payment of $349.355.06 (by check) for the Inversiones Euskera claim a few days later on March 17, 2016. On March 23, 2016, the DUP check was deposited into a Citibank account ending 5303 opened by Brok on March 17, 2016. Brok is the sole signatory on that account. His cell phone (identified through subsequent calls where Brok spoke to the DUP and law enforcement) is used as a contact number on the account and his prior business address in Miami was used on the account. On March 30, 2016, Brok withdrew $146,500.00 from the Citibank account, signing a transaction receipt for the withdrawal. The rest of the money was spent through debit card transactions and checks, including purchases and ATM transactions in Miami where Brok was residing. There are several checks to MMC Video, Film Studios Miami, and Eli Camera Pros, LLC (which are companies associated with Brok); one to Brok's wife; and two checks to a witness (the "Witness") later interviewed by law enforcement and discussed below. On July 7, 2016, the Citibank account was closed by Brok.

    ii. <u>Isabella Overseas, LTD.</u>

On June 9, 2016, a claim was filed with the DUP seeking funds in accounts of Isabella Overseas Ltd, totaling $207,292.74; however, this claim was not paid. The account associated with the IP address used in making the claim used Brok's business address and his cell phone number.

Brok also called and emailed DUP directly about the claim. On or about September 15, 2016, Brok called claiming to be assisting Hollier Simmons Solicitors of Dublin,

Ireland, with the claim. Upon being notified that the claim was referred to DUP's legal department, he immediately said that he was withdrawing from the claim. Documents purporting to be from the law firm of Hollier Simmons Solicitors and the High Court of Ireland had been included with the claim to substantiate it.

On September 21, 2016, law enforcement called the telephone number on the claim form, which is also the telephone number listed for IP address discussed above. Brok answered and was asked how he was involved with the Isabella Overseas Ltd. claim. He indicated that he was a retired New York attorney and happened to meet "William Hollier," a supposed partner in the firm, on a plane. During their conversation, "Mr. Hollier" mentioned that he wanted to open a United States office to do some business and needed a contact. Mr. Brok claimed to have met him again in London in January 2016. However, the Examiner of the High Court of Ireland confirmed that the firm (Hollier Simmons Solicitors) did not exist and that there was no solicitor named "William Hollier."

Additionally, on January 28, 2021, investigators interviewed the Witness who confirmed that he began working with Brok filing claims with DUP. Brok and the Witness initially filed claims for people they knew to help them get their money back, and they would get a percentage. However, Brok then started having the Witness look for companies they had no association with. Brok told him they would find the owners later. As time went by, the Witness realized that Brok was faking documents and identifications to file the claims.

In total, Brok fraudulently obtained over $370,000 in DUP funds and unsuccessfully sought to fraudulently obtain another approximately $1.8 million in DUP funds.

On November 17, 2020, law enforcement called Brok and informed him that they were investigating false claims to the DUP and would like to interview him. Brok told the investigator that he was in Italy working on a project and would not be back until January or February. Brok did not return to the United States in January or February 2020. On December 1, 2020, the defendant was indicted on two counts of mail fraud.

On January 28, 2021, during the interview of the Witness, investigators learned that the Witness was still in contact with Brok. The Witness indicated that both he and Brok still had cellphones thru a mutual corporate account, and he could access the cellular phone statements which showed Brok's location during calls. The Witness stated that Brok was actually in Spain when he told the agent that he was in Italy, and that Brok further indicated that he was planning on retiring in Spain and was not planning on returning to the United States.

Today, May 10, 2024, Brok arrived at JFK Airport for a layover while traveling to Barcelona, Spain from Buenos Aires, Argentina. He was arrested at JFK Airport by the Federal Bureau of Investigation. Based on the information available to the Government, this is the first time that Brok has been in the United States since he was informed by law enforcement that they wanted to speak to him about claims made to the DUP. Assuming that Brok qualifies for a Criminal History Category of I, based on his known criminal history, his estimated Guidelines range is 30 to 37 months in prison.

II.     Legal Standard

The Bail Reform Act of 1984, codified at 18 U.S.C. §§ 3141–3156, provides that, in general, a court "shall order" a defendant's pretrial release unless the court determines that the defendant presents an unreasonable risk of flight or "will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). The government must ultimately persuade the court by a preponderance of the evidence that the defendant is a flight risk or by clear and convincing evidence that the defendant is a danger to the community. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release and (4) the weight of the evidence against the defendant. See 18 U.S.C. § 3142(g).

Where the evidence of guilt is strong, it provides "a considerable incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

Evidentiary rules do not apply at detention hearings and the Government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer. LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted).

III.    Argument

Brok should be detained pending trial because he poses a strong risk of flight. As mentioned above, after learning of a law enforcement investigation into his fraudulent conduct, the defendant remained outside of the United States for a period of more than four years despite informing law enforcement that he would be returning shortly. He was not located again until he arranged for a layover flight into the United States arriving today. Brok arrived from Argentina where he was born and has every incentive to return there. Brok represents a particular flight risk because he maintains strong ties to Argentina. Brok's incentive to flee is particularly acute given the substantial sentence he would face if convicted. He faces a statutory maximum sentence of twenty years on each count and his anticipated Guidelines range is 30 to 37 months in prison. That possible sentence underscores the incentive for the defendant to flee the jurisdiction and avoid prosecution. See United States v. Blanco, 570 F. App'x 76, 77 (2d Cir. 2014) (affirming district court's order of detention where defendants face lengthy term of imprisonment); United States v. Dodge, 846 F. Supp. 181, 184–85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight). In addition, the evidence against Brok is very strong, given the extensive paper trail and evidence against him. See United States v. Millan, 4

4

F.3d 1038, 1046 (2d Cir. 1993) (holding that, where the evidence of guilt is strong, it provides "a considerable additional incentive to flee").

Given the penalties he faces and his ties to Argentina, Brok has every incentive to flee  See United States v. Liebowitz, 669 F. A'ppx 603, 605 (2d Cir. 2016) ("the lengthy jail sentence that could be imposed for the charged crimes provides an incentive to flee [and] the likelihood of flight is reinforced in this case by that fact that Liebowitz holds Australian as well as United States citizenship and has family members in Australia"); United States v. Baig, 536 F. App'x 91, 93 (2d Cir. 2013) (affirming detention order in part because the defendant "though a permanent resident of the United States, is a citizen of Pakistan and maintains ties there"); United States v. Mercedes, 254 F.3d 433, 438 (2d Cir. 2001) (ordering pretrial detention and reversing the district court's grant of release where the defendant was a legal permanent resident of the United States (not a citizen), faced a substantial sentence, and evidence linked him to a violent robbery); United States v. El-Hage, 213 F.3d 74, 80 (2d Cir. 2000) (noting that a defendant's "history of travel and residence in other countries" is a factor that has been long-approved by the Second Circuit in determining whether a defendant should be detained).

In light of Brok's efforts to escape prosecution, his ties to other countries, the strength of the government's case, and the serious penalties he faces if convicted, Brok presents a risk of flight that no combination of conditions can mitigate.

IV.     Conclusion

For the reasons set forth above, the government respectfully submits that no condition or combination of conditions will assure Brok's return to court. He should be detained pending his removal to the Northern District of Florida.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
Katherine P. Onyshko
Assistant U.S. Attorneys
(718) 254-7000

cc:     Clerk of Court (VRS) (by email)
Defense Counsel (by email)